# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LISA H.,<br><br>   Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>   Defendant. | Civil Action No. 1:23-cv-11772<br><br>**OPINION** |

**APPEARANCES**:

Samuel Fishman
CHERMOL & FISHMAN, LLC
11450 Bustleton Avenue
Philadelphia, PA 19116

  *On behalf of Plaintiff.*

Erica Adams
Special Assistant United States Attorney
C/O SOCIAL SECURITY ADMINISTRATION
OFFICE OF PROGRAM LITIGATION,
OFFICE OF THE GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

  *On behalf of Defendant.*

**O'HEARN, District Judge.**

  This matter comes before the Court on Plaintiff Lisa H.'s[1] ("Plaintiff") appeal from a denial of Social Security disability benefits and supplemental security income by the Acting Commissioner of Social Security ("Commissioner"). The Court did not hear oral argument

---

[1]  Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

pursuant to Local Rule 78.1. For the reasons that follow, the Court **AFFIRMS** the Commissioner's decision.

## I.   BACKGROUND

The Court recites herein only those facts necessary for its determination on this appeal.

### A.  Administrative History

On April 23, 2014, Plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging that she had been disabled since April 1, 2013. (AR 217–220, 221–226). The applications were denied initially on July 19, 2014 (AR 92–93), and upon reconsideration on April 20, 2015. (AR 116–17). Thereafter, Plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ") on April 24, 2015. (AR 139–40). The ALJ held a hearing on June 9, 2017, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert ("VE"). (AR 37–73). In a decision dated August 23, 2017, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 8–21). That decision became the final decision of the Acting Commissioner when the Appeals Council declined review on September 20, 2018. (AR 1–7).

On October 18, 2018, Plaintiff filed a subsequent Title II claim. (AR 1579–80). The State agency issued a partially favorable determination finding Plaintiff disabled as of January 7, 2019. (AR 1462).

Plaintiff timely filed an appeal on November 11, 2018, pursuant to 42 U.S.C. § 405(g). (AR 1419–20). On May 5, 2020, this Court remanded Plaintiff's case for further proceedings. (AR 1457–59). On September 30, 2020, the Appeals Council remanded Plaintiff's case for further review. (AR 1460–65). In the order, the Appeals Council directed the ALJ to consolidate Plaintiff's "claims files, associate the evidence and issue a new decision on the consolidated claims." (AR

1323). Further, the ALJ was directed to "apply the prior rules to the consolidated case pursuant to HALLEX I-5-3-30." [2] (AR 1323,1462). The case then was heard by ALJ Trina Moore. (AR 1323). On January 31, 2022, the ALJ held a telephonic hearing due to the extraordinary circumstances presented by the COVID-19 global pandemic. (AR 1358–90). Plaintiff, who was represented by counsel, testified, as did a VE. (AR 1358–90). On July 19, 2022, the ALJ issued an unfavorable decision, concluding that Plaintiff was not disabled within the meaning of the Social Security Act for the period of April 1, 2013, through January 6, 2019. (AR 1323–44). Plaintiff appealed the decision to the Appeals Council, which affirmed on June 27, 2023. (AR 1305–11). Plaintiff timely filed an appeal on August 29, 2023, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). (ECF No. 1).

### B.  Plaintiff's Background and Testimony

Plaintiff has a high-school level education and one year of college, and worked full-time as a resident care aide until approximately March 2016. (AR 1363). Her duties entailed providing care for clients who were mentally challenged and disabled. (AR 1363). In this role, she spent most of the time standing and lifting ten to twenty pounds. (AR 1363–65). She worked in this role for over twenty-five years. (AR 1364).

The alleged onset date is April 1, 2013, at which time Plaintiff was 44 years old. (AR 1323, 1363). Plaintiff's initial disability claim filed in 2014 cited the following illness, injuries, or conditions: cardiomyopathy, congestive heart failure, pulmonary hypertension, metabolic

---

[2]    Social Security Administration's Hearings, Appeals, and Litigation Law Manuel ("HALLEX") I-5-3-30 advises that "[i]f the subsequent application[ ] is filed on or after March 27, 2017, and the pending application[ ] is filed before March 27, 2017, adjudicators will apply the prior rules to the consolidated case." 2017 WL 1362776 (Apr. 14, 2017). Thus, although 20 C.F.R. §§ 404.1527 and 416.927 have been rescinded they still apply in cases such as Plaintiff's where the DIB application was filed prior to March 27, 2017. (AR 1323).

syndrome, diabetes type I, obesity, sleep apnea, fibromyalgia, hypothyroidism, high blood pressure, and removed thyroid cancer. (AR 74).

Plaintiff testified that she became unable to work in 2013 due to the severity of her mental impairments, and since then she has been receiving mental health treatment. (AR 1387). She testified that she had never been recommended for any inpatient hospitalization or inpatient intensive therapy. (AR 1388). During the hearing, Plaintiff further testified that she suffers from the following conditions: migraines two to three times a week which last the entire day; neck pain that travels down her arm and back; low back pain that travels to her hips, legs, and feet; neuropathy in her hands and feet; abnormal sensations in her feet; sleep apnea; blurred vision; fibromyalgia; mood swings; depression; and anxiety. (AR 1367–72). She testified that she can only stand between two to five minutes, walk for only about half a city block, and lift up to five pounds. (AR 1374).

Plaintiff also testified regarding her difficulty completing tasks at home, and her reliance on her older children to assist her with bathing, getting dressed, cooking, and cleaning. (AR 1372–73). They also assist her with grocery shopping and traveling to doctors' appointments. (AR 1373).

### C. Testimony of Vocational Expert

James Soldner, VE, testified during the January 31, 2022 hearing. (AR 1378). The VE classified Plaintiff's prior work as a resident care aide pursuant to the Dictionary of Occupational Titles ("DOT"). (AR 1379). The VE noted that Plaintiff worked as a resident care aide with more than one company. (AR 1379). While the DOT describes the work as medium, the VE testified it was light as performed by Plaintiff. (AR 1379).

The ALJ posed three hypotheticals to the VE during the hearing. (AR 1379–83). The first hypothetical assumed an individual with Plaintiff's vocational profile and Residual Functional Capacity ("RFC") with the following limitations:

> Never climbs ladders, ropes or scaffolds, or crawls. Occasionally climbs ramps and stairs, balancing, stooping, kneeling, and crouching. Frequently handling and fingering bilaterally. No contact operation of foot controls bilaterally. Avoid contracted exposure to extreme temperatures, humidity, pulmonary irritants. Avoid all exposure to hazards such as unprotected heights and moving mechanical parts and no driving for a profession.

(AR 1379). The question presented was whether such an individual could perform Plaintiff's prior line of work, and the VE testified that such an individual could perform the work of a resident care aide as performed by Plaintiff but not as described in the DOT. (AR 1379–80). The VE also testified that such an individual would be able to perform work as a mail clerk, office helper, and cashier II. (AR 1380). The VE further testified that the jobs with a special vocational preparation level of two that such an individual could perform included personal attendant, patient administration specialist, or case aide. (AR 1381–82).

The second hypothetical assumed an individual with Plaintiff's vocational profile but with an RFC to perform sedentary work with the same limitations as the individual described in the first hypothetical. (AR 1381–82). The VE testified Plaintiff's past work, as described and as performed, would be precluded. (AR 1382). However, such an individual could perform the jobs of table worker, food and beverage order clerk, and dowel inspector. (AR 1382).

The third hypothetical assumed an individual with Plaintiff's vocational profile with the RFC to perform sedentary work with the same limitations as those in the second hypothetical but now with the additional limitation that the individual would be off task twenty percent of the

workday and absent two days a month. (AR 1383). The VE testified that there would be no jobs available for such an individual. (AR 1383).

Finally, the ALJ asked the VE what types of jobs a hypothetical individual with an RFC to perform sedentary work as defined by the DOT, including the limitation of carrying out simple, routine tasks on a continuous basis, with simple instructions and making simple work-related decisions, could perform. (AR 1385–86). The VE opined that such an individual would be able to work as a table worker, food and beverage order clerk, and dowel inspector. (AR 1386).

The VE testified that his testimony was consistent with the DOT and its companion, the Selected Characteristics of Occupations ("SCO"), except for the areas where he relied on his own education and experience. (AR 1383).

**D. Medical History**

The Court will briefly summarize the relevant medical evidence for the purposes of this appeal. Plaintiff has challenged both the extent of the physical limitations, and lack of mental limitations, on appeal. This recitation is not comprehensive.

1. <u>Patrick Cronin, M.D.</u>

Dr. Patrick Cronin, a rheumatologist, treated Plaintiff from 2008 to 2015. (AR 598–99; 604–08). In Dr. Cronin's July 1, 2015 Report, he diagnosed Plaintiff with uveitis, sarcoidosis, severe carpal tunnel that required surgery, fibromyalgia accompanied by chronic progressive muscle pain, and fatigue. (AR 606). Dr. Cronin stated that Plaintiff would require treatment every three months and would be absent from work due to flare-ups one to two times a month and possibly out between one to four weeks at a time. (AR 607). Dr. Cronin also noted that Plaintiff had a "handgrip impairment" which caused her pain and fatigue. (AR 606). Dr. Cronin had the

same medical findings in his October 20, 2015 Report with the addition of a new diagnosis of lumbar foraminal stenosis. (AR 599).

### 2.  Donna Hogue, M.D.

Plaintiff began seeing Dr. Donna Hogue, a pulmonologist, on an annual basis on July 31, 2014. (AR 2726). In a December 22, 2021 Report, Dr. Hogue noted Plaintiff had a history of sarcoidosis, sleep apnea, asthma, and stated that Plaintiff's symptoms included shortness of breath and nasal congestion. (AR 2726). Dr. Hogue identified exercise as a precipitating factor to an acute asthma attack but was unable to identify the nature, severity, and frequency of the attacks. (AR 2726). Further, Dr. Hogue indicated that Plaintiff should avoid exposure to certain environmental restrictions like extreme cold, extreme heat, high humidity, and wetness. (AR 2728).

### 3.  Ross Zimmer, M.D.

Dr. Ross Zimmer, a cardiologist, treated Plaintiff from 2014 until 2020. (AR 2976). In his December 29, 2021 Report, Dr. Zimmer diagnosed Plaintiff with chronic diastolic heart failure. (AR 2976). Plaintiff's symptoms included exertional dyspnea, exercise intolerance, and chronic fatigue. (AR 2976). Dr. Zimmer opined Plaintiff could only tolerate "low stress work" but commented that the reasons for his conclusion were "unknown for sure but [that was the] best assessment given [Plaintiff's] age" and cardiac issues. (AR 2977). He further stated that Plaintiff could only walk for two city blocks. (AR2977). He opined that Plaintiff could stand/walk for less than two hours but could sit for at least six hours. (AR 2977). As such, Plaintiff would need a job that would permit her to take unscheduled breaks and shift from sitting, standing, or walking. (AR 2977). Dr. Zimmer opined that Plaintiff's physical symptoms and limitations caused her emotional difficulties such as chronic anxiety and depression but could not explain why that was the case. (AR 2977). Dr. Zimmer further opined that Plaintiff would rarely be able to lift less than ten pounds

and would not be able to lift over that amount. (AR 2978). Plaintiff would rarely be able to twist, stoop, crouch, squat, or climb stairs. (AR 2978). But she would never be able to climb ladders. (AR 2978). Dr. Zimmer also opined that Plaintiff should avoid even moderate exposure to extreme cold and extreme heat. (AR 2978). Finally, Dr. Zimmer stated Plaintiff is likely to be off task ten percent of a typical workday and would have "good days" and "bad days." (AR 2979). However, Dr. Zimmer noted that the frequency of her being off task was "really unknown." (AR 2979).

### 4.   Jeannette Maldonado, Psy.D.

On August 28, 2019, Dr. Jeannette Maldonado, a psychologist, completed a mental RFC assessment of Plaintiff. (AR 1433–36). Dr. Maldonado noted Plaintiff had a moderately limited ability to: remember locations and work-like procedures; carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and respond appropriately to changes in the work setting. (AR 1433–35). She also noted that Plaintiff had severe anxiety and obsessive-compulsive disorders. (AR 1431).

### 5.   Nicole Mannis, Psy.D.

On February 5, 2020, Dr. Nicole Mannis, a psychologist, also completed a mental RFC assessment of Plaintiff. (AR 1451–53). Dr. Mannis noted Plaintiff had a moderately limited ability to:  remember locations and work-like procedures; understand and remember detail instructions; carry out detailed instructions; perform activities with a schedule; maintain regular attendance; be punctual with customary tolerances; and respond appropriately to changes in the work setting. (AR 1451–53). She also noted that Plaintiff had severe anxiety and obsessive-compulsive disorders.

(AR 1448). Dr. Mannis opined that Plaintiff was disabled and identified her maximum sustained work capability to be sedentary. (AR 1440–55).

### 6.  Raymond Briski, M.D.

Dr. Raymond Briski, a state agency medical consultant, in his July 19, 2014 assessment opined that Plaintiff was not disabled but identified her maximum sustained work capability to be sedentary. (AR 74–82).

### 7.  Mohammad Rizwan, M.D.

Similarly, Dr. Mohammad Rizwan, a state agency consultant, in his August 23, 2019 assessment also opined Plaintiff was disabled and identified her maximum sustained work capability to be sedentary. (AR 1421–38). Dr. Rizwan limited Plaintiff to standing for only four hours. (AR 1432, 1449).

### 8.  Deogracias Bustos, M.D.

In another assessment from February 3, 2020, Dr. Deogracias Bustos, a state agency consultant, opined that Plaintiff could occasionally lift up to ten pounds, stand for four hours a day, and sit for six hours a day. (AR 1450).

## II.  LEGAL STANDARD

### A.  Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). By contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations, quotation marks, and alteration omitted); *see also Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009).

The substantial evidence standard is a deferential standard, and an ALJ's decision cannot be set aside merely because a Court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. N.L.R.B.*, 804 F.2d 808, 812 (3d Cir. 1986); *see e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.").

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). "The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Id.*; *see also Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "'review the evidence in its totality,' and 'take into account whatever in the record fairly detracts from its weight.'" *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of*

*Health & Hum. Servs.,* 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent*, 710 F.2d at 114). Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000)).

### B. Sequential Evaluation Process

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i)–(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (internal citations and footnote omitted) (alterations in original).

### III. <u>ALJ DECISION</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from April 1, 2013, the alleged disability onset date, through January 6, 2019 ("Relevant Time Period"). (AR 1327).

At step two, the ALJ found that Plaintiff suffered from the following several severe medically determinable impairments: cardiomyopathy, sleep apnea, asthma, degenerative disc disease of the lumbar/cervical spine, diabetes mellitus, obesity, fibromyalgia, and bilateral carpal tunnel syndrome. (AR 1327). The ALJ considered these impairments to significantly limit Plaintiff's ability to perform basic work activities. (AR 1327). As for Plaintiff's uveitis, hypertension, and uterine fibroids, the ALJ found that these conditions did not impose more than minimal work-related limitations and thus were non-severe. (AR 1327). Further, the ALJ found Plaintiff's medically determinable mental impairments of major depressive disorder and anxiety disorder, considered individually and collectively, did not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities and thus were non-severe. (AR 1328–30).

At step three, the ALJ found that during the Relevant Time Period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listing. (AR 1330–33). Before making the step four determination, the ALJ found that Plaintiff had the RFC to perform light work subject to the following limitations:

> [C]ould never climb ladders, ropes, scaffolds or crawl; occasionally climb ramps/stairs, balance, stoop, kneel and crouch; frequently handle and finger bilaterally; perform no constant operation of foot controls bilaterally; needed to avoid concentrated exposure to

> extreme temperatures, humidity and pulmonary irritants; needed to avoid all exposure to hazards such as unprotected heights and moving mechanical parts; and could perform no driving for a profession.

(AR 1333).

At step four, the ALJ considered Plaintiff's RFC along with the physical and mental demands of a resident care aide and found that Plaintiff was able to perform the job as actually performed. (AR 1341–42). However, considering Plaintiff's performance of the job was at times at a medium exertional level, the ALJ opted to continue to step five in the sequential evaluation process. (AR 1342).

At step five, the ALJ, relying on the testimony of the VE, found that during the Relevant Time Period, Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. (AR 1342-43). Specifically, the VE testified that there are approximately 13,000 jobs as a mail clerk, approximately 13,000 jobs as an office helper, and approximately 569,000 jobs as a cashier II in the national economy that could be performed by an individual with Plaintiff's vocational profile. (AR 1342–43). This testimony was determined by the ALJ to be consistent with the DOT. (AR 1343). The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act for the Relevant Time Period. (AR 1343–44).

## IV. **DISCUSSION**

In her appeal, Plaintiff identifies two alleged errors within the ALJ's decision: that the ALJ (1) improperly rejected all the medical opinions in the record and instead relied on her own lay speculation; and (2) failed to accord significant deference to Plaintiff's treating physicians and explain why she rejected functional limitations described in some medical sources. (*Id*. at 4–15).

Though these issues overlap to some extent, the Court will address each of these arguments separately. For the reasons that follow, the Court affirms the ALJ's decision.

### A.  The ALJ Properly Evaluated the Medical Opinions of Record.

Plaintiff argues that the ALJ failed to properly evaluate the medical opinions of her treating doctors, Drs. Cronin, Hogue, and Zimmer, and the state agency medical consultants, Drs. Briski, Rizwari, and Bustos. (*Id*. at 4). Specifically, Plaintiff alleges the following errors: (1) the ALJ committed significant legal error in rejecting all of the medical opinions, relying entirely on her own lay speculation to formulate Plaintiff's RFC; (2) the ALJ's error affected her RFC finding and her finding as to the severity of Plaintiff's impairments; and (3) the ALJ's finding that Plaintiff's "major depressive disorder and anxiety disorder did not meet even the *de minimis* standard for mental impairments is contradicted by the only mental health professionals' opinion of record." (*Id*. at 4, 7–10). Upon review of the ALJ's decision, the Court finds no error in the ALJ's evaluation of these medical opinions.

As an initial matter, the Third Circuit has held that "the ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2012). Indeed, the ALJ "is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision," and "the regulations do not require ALJs to seek outside expert assistance." *Id.*; *see also Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003) ("[T]he ALJ is responsible for making a [RFC] determination . . . and [s]he is not required to seek a separate expert medical opinion."). And *Doak v. Heckler*, 790 F.2d 26 (3d Cir. 1986) and its progeny, as Plaintiff argues, (Pla. Br., ECF No. 6 at 4, 15), does not state otherwise. As this Court recently explained, "*Doak* does not stand for the proposition that an ALJ cannot make an RFC

14

determination in the absence of a medical opinion reaching the same conclusion. Such a rule would be inconsistent the Third Circuit's express holding that '[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.'" *Danielle M. v. Kijakazi*, No. 20- 16554, 2022 WL 3444027, at *11 (D.N.J. Aug. 16, 2022) (King, M.J.) (citing *Cleinow v. Berryhill*, 311 F. Supp. 3d 683, 685 (E.D. Pa. 2018)). There is no "legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC. Surveying the medical evidence to craft an RFC is part of the ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Yet, even though there is no requirement that a physician have made the findings that an ALJ adopts, nevertheless, here, the ALJ did not "reject" all medical opinions as Plaintiff maintains.

To be sure, the RFC is crafted at step four and Plaintiff bears the burden at this step. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007). An ALJ "is entitled to weigh all evidence in making its finding . . . [and] is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences." *Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) (internal citation and quotation marks omitted). An ALJ "must consider all the evidence and give some reason for discounting the evidence she rejects." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). An ALJ's factual findings, including the RFC, do not need to follow a particular format "so long as 'there is sufficient development of the record and explanation of findings to permit meaningful review.'" *Tompkins v. Astrue*, No. 12-1897, 2013 WL 1966059, at *13 (D.N.J. May 10, 2013) (quoting *Jones*, 364 F.3d at 505). The ALJ is not required to adopt all limitations assigned by a medical opinion, even if the medical opinion is given significant weight. *See*, *e.g.*, *Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014). When faced

with conflicting evidence, an ALJ has discretion in choosing whom to credit. *See Brown*, 649 F.3d at 196–97.

Here, the ALJ did not outright reject any of the medical opinions in the record. (Pla. Br., ECF No. 6 at 7). Rather, the ALJ afforded them little to partial weight because she found that they "offered vague and conclusory findings that [Plaintiff] was unable to work." (AR 1338). Specifically, the ALJ noted that while the opinions "provided checkboxes or summary findings indicating limitations with various physical activities [ . . . ] these assessed limitations were not quantified and [the] opinions were not accompanied by any discussions nor citations to clinical findings/symptoms." (AR 1338).

Dr. Cronin diagnosed Plaintiff with severe carpal tunnel, fibromyalgia, chronic progressive muscle pain, and fatigue. (AR 606). And he opined she would need to be absent from work one to two times a month, and possibly up to one to four weeks at a time, due to flare ups, and would be unable to grip due to pain and fatigue. (AR 606–08). Plaintiff submits that it was inappropriate for the ALJ to assign Dr. Cronin's opinion little weight and to not include any corresponding limitations to allow for work absences in the RFC. (Pla. Br., ECF No. 6 at 4–5). This argument is not persuasive as the ALJ provided several reasons for affording Dr. Cronin's opinion little weight. The ALJ explained that although Dr. Cronin was Plaintiff's treating physician, the opinion was entitled to "little weight" as it was "vague and conclusory, fail[ed] to offer any function-by-function assessment of her residual abilities or limitations, and [was] inconsistent with the medical evidence [ . . .] as there [was] no evidence of significant missed appointments, time off task or other indications to support a need for work absence." (AR 1339). Notably, Dr. Cronin's findings do not contain references to any underlying medical records to support his opinions. Further, the ALJ found that Dr. Cronin's opinion was inconsistent with the evidence demonstrating positive

upper and lower extremity strength, full range of motion of all extremities, and normal reflexes. (AR 1339, *see e.g.,* AR 448, 452, 456, 459, 460). Thus, the ALJ sufficiently articulated the reasoning for the little weight she assigned to Dr. Cronin's opinions. *See Danita F. v. Comm'r of Soc. Sec.*, No. 20-13285, 2022 WL 1165724, at *11(D.N.J. Apr. 20, 2022) (finding assignment of little weight to opinion was proper as the description of limitations were vague and her explanations lacked detail); *Kimberly G. v. Comm'r of Soc. Sec.*, No. 23-01026, 2024 WL 863238, at *7 (D.N.J. Feb. 29, 2024) (same).

Dr. Hogue diagnosed Plaintiff with a history of sarcoidosis, sleep apnea, and asthma and stated that her symptoms included shortness of breath and nasal congestion. (AR 2726). She also opined that Plaintiff should avoid exposure to certain environmental restrictions like extreme temperatures. (AR 2728). The ALJ afforded Dr. Hogue's opinion "some weight" and found that the opinion was "consistent with the claimant's documented respiratory/pulmonary complaints during the pertinent period." (AR 1339). However, Plaintiff takes issue with the ALJ including a limitation in the RFC for her "to avoid concentrated exposure to extreme temperatures, humidity and pulmonary irritants" but failing to include several of the remaining environmental restrictions (e.g., dust, wetness, etc.). (Pla. Br., ECF No. 6 at 5). However, Plaintiff's contention regarding the "concentrated exposure" limitation in the RFC versus an "all exposure" limitation as opined by Dr. Hogue is a distinction that makes no difference here. None of the occupations identified at Step Five—mail clerk, office helper, and cashier II—involve any exposure to any environmental condition. As such, even had the ALJ adopted Dr. Hogue's proposed restriction to avoid "all exposure," Plaintiff fails to meet her burden to show that the outcome would have changed.

Next, Plaintiff takes issue with the ALJ's finding that Plaintiff had the RFC to perform light work despite Dr. Zimmer's opinion that Plaintiff could only stand or walk for less than two

hours, sit for at least six hours and would need a position that would permit her to shift from sitting, standing, or walking, and to take unscheduled breaks during the work day. (AR 1339, 2977). The ALJ explained that this opinion was afforded only partial weight to the extent it involved the limitations applied to the period at issue because Plaintiff was capable of a range of work at a light exertional level given her "strength deficits and lack of atrophy." (AR 1339). However, the ALJ did find Dr. Zimmer's opinion that the Plaintiff "had limitations pertaining to her exposure to temperature extremes," consistent with the medical record but disagreed as to the degree of limitation. (AR 1339–40). The ALJ found that instead "additional restrictions pertaining to manipulative activities, operation of foot controls, driving and other environmental factors" were more prudent due to Plaintiff's "radicular symptoms, neuropathy, cardiac impairments, obesity, and carpal tunnel syndrome, among other impairments." (AR 1340).

As to the medical opinions of Drs. Briski, Rizwan, and Bustos, all state agency doctors, which all found Plaintiff's maximum sustained work capability to be sedentary, the ALJ explained in detail that these opinions were not consistent with objective medical evidence. The ALJ noted that Plaintiff received "generally conservative treatment for her cardiac impairments," her records demonstrated strong upper and lower extremity strength, and "full range of motion with no evidence of atrophy." (AR 1341). Thus, based on the medical record, the ALJ rejected these opinions and determined that Plaintiff was capable of performing light work.

Drs. Maldonado and Mannis both found that Plaintiff had severe anxiety and obsessive-compulsive disorders. (Pla. Br., ECF No. 6 at 7–8; AR 1431, 1448). The ALJ disagreed. (AR 1330). Plaintiff contends the ALJ's rejection of Drs. Maldonado's and Mannis's opinions was improper and that the finding that Plaintiff had no severe mental impairment, and the lack of a

mental functional limitation are not supported by the evidence. (Pla. Br., ECF No. 6 at 10). The Court does not find these arguments persuasive.

The ALJ's finding that Plaintiff's major depressive disorder and anxiety disorder was non-severe is supported by substantial evidence. In making this determination, the ALJ first discussed several treatment notes and letters, which the ALJ explained supported the finding that Plaintiff's mental impairments were non-severe. *See* (AR 1245, 1328) (October 2015 therapy notes indicated that while Plaintiff had been treated for anxiety and depression in 2002, while still anxious, she was no longer depressed); (AR 1245, 1261) (treatment notes reflected Plaintiff was fully oriented, alert, her memory was intact, exhibited no issues with thought process, and no problems with attention or concentration). Second, she considered the four broad areas of mental functionality for evaluating mental disorders: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (AR 1329); 20 C.F.R. § 404.1520a(c). The ALJ thoroughly analyzed each category and cited to multiple records to support her findings.

For example, as to the first category, the ALJ explained that the objective medical evidence demonstrated "she could provide information regarding her health, describe her prior work history, follow instructions from healthcare providers and respond to questions from providers, and mental status examinations did not reveal any significant or persistent memory deficits." (AR 1329). Thus, the ALJ determined she had a mild limitation in this area. (AR 1329). Regarding the second category, the ALJ noted that while Plaintiff admitted in one report she had issues interacting with others, in another she denied this and admitted "she could shop, spend time with her friends/family and deal appropriately with authority figures." (AR 1329). Thus, the ALJ determined she had no limitation in this regard. (AR 1329). Regarding the third category, the ALJ noted that although

Plaintiff "alleged she had trouble concentrating and completing tasks, she also admitted she could drive short distances, prepare simple meals, [and] manage funds." (AR 1330). As such, the ALJ determined Plaintiff only had a mild limitation in this area. (AR 1330). And for the fourth category, the ALJ noted that "[w]hile a depressed and/or anxious mood were noted at times, there was no evidence of issues with her temper control." (AR 1330). The ALJ therefore found no limitation in this regard. The ALJ appropriately considered the entire record, including Drs. Maldonado's and Mannis's opinions, and relied upon substantial evidence in finding Plaintiff's mental impairments to be non-severe.

Thus, Court discerns no error in the ALJ's evaluation of the medical opinions in the record.

### B.  The ALJ Properly Evaluated the Opinions of Plaintiff's Treating Physicians.

Plaintiff also separately contends deference was owed to the opinions of her treating physicians—Drs. Cronin, Hogue, and Zimmer. (Pla. Br., ECF No. 6 at 12–13). Upon review of the ALJ's decision, the Court finds no error in the ALJ's evaluation of these medical opinions.

When evaluating medical evidence, an ALJ must give controlling weight to and adopt the medical opinion of a treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[3] If the treating physician's medical opinion is not required to be given controlling weight under the regulations, 20 C.F.R. §§ 404.1527(c)(1)–(6) provide factors to consider in determining the weight afforded to opinions, including the nature and extent of the treatment relationship, length of relationship, frequency of examination, supportability of the opinion afforded by the medical evidence, consistency of the

---

[3]  This case arises from a claim filed before March 27, 2017 and is therefore analyzed by this Court—as it was by the ALJ—under 20 C.F.R. §§ 404.1527 and 416.927.

opinion with the record as a whole, and specialization of the treating physician. *See Russo v. Astrue*, 421 F. App'x. 184, 190 (3d Cir. 2011); *see also Plummer*, 186 F.3d at 429 (explaining that an ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided").

 As discussed in detail above, none of the medical opinions offered by Plaintiff's treating physicians are entitled to deference as they fail to satisfy an important requirement—support from the medical record. As the ALJ aptly highlights, each of the opinions offered by Drs. Cronin, Hogue, and Zimmer are conclusory in nature and not consistent with the record as a whole. (AR 1338). Moreover, as discussed above, the ALJ explained her reasons for rejecting or affording little or partial weight to certain medical opinions. (Pla. Br., ECF No. 6 at 13). It was within the ALJ's discretion to choose to disregard them and not include them in the RFC.

In short, Plaintiff's arguments amount to nothing more than a veiled request for this Court to reweigh the evidence. The Court will not do so. *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986); *Chandler*, 667 F.3d at 359; *Nieves v. Comm'r of Soc. Sec.*, No. 20-02590, 2021 WL 2682629, at *2 (D.N.J. June 30, 2021) ("[T]he Court cannot re-weigh the evidence, and if the Court finds that the ALJ's decision is based on substantial evidence it must affirm even if the Court would have decided the case differently."); *Alycea K. v. Kijakazi*, No. 17-02683, 2022 WL 17733663, at *8 (D.N.J. Dec. 16, 2022). Contrary to Plaintiff's arguments, as discussed above, the ALJ provided an adequate explanation for each opinion she elected to afford little to partial weight and her reasoning is supported by the medical record.

## CONCLUSION[4]

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Acting Commissioner. An appropriate Order will follow.

**CHRISTINE P. O'HEARN**
**United States District Judge**

---

[4] Plaintiff also sought a direct award of benefits. While the Court has the ability to direct an award of benefits, it can only do so if (1) the administrative record is fully developed, and (2) substantial evidence on the record indicates that the Plaintiff is disabled and entitled to benefits. *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357–58 (3d Cir. 2008). Here, the request is moot based on the Court's affirmance of the ALJ's decision.